**GREAT PLAINS AIRLINE SHARE-HOLDERS ASSOCIATION, INC.,**
Plaintiff-Appellant,

v.

**FRONTIER AIRLINES, INC.,**
Defendant-Appellee.

No. 80–1830.

United States Court of Appeals,
Fifth Circuit.

Nov. 30, 1981.

White, McElroy, White, Sides & Rector, B. Thomas McElroy, Dallas, Tex., for plaintiff-appellant.

Jack Pew, Jr., Dallas, Tex., Wilbur L. Fugate, Baker & Hostetler, Charles S. Murphy, Washington, D.C., for defendant-appellee.

Before AINSWORTH, INGRAHAM and TATE, Circuit Judges.

PER CURIAM:

Plaintiff Great Plains Airline Shareholders Association appeals from a grant of summary judgment in favor of the defendant Frontier Airlines on the basis of antitrust immunity provided by section 414 of

the Federal Aviation Act, 49 U.S.C. § 1384.[1] Plaintiff agrees with the legal standard for determining immunity that was applied by the district court, but disagrees with the court's application of the standard to facts of the case. Because we are unable to say that the district court erred in granting summary judgment, we affirm the decision below.

This case involves the operation of the Fort Sill Scheduled Airline Traffic Office (SATO). A SATO is a ticketing outlet for personnel on a military base or NASA installation; it functions like a regular airline ticket office, except that instead of representing a single airline, it represents a number of participating certified air carriers and other "concurring airlines" that are members of the group and share its expenses. SATOs are established under a resolution that has been expressly approved by the Civil Aeronautics Board (CAB) under authority of 49 U.S.C. § 1382. Defendant Frontier performed the administrative duties of the Fort Sill SATO, and Great Plains, *which was not a concurring member during the period in question*, claims that during its administration of the SATO, Frontier engaged in a number of practices that amounted to conspiracy, monopolization, and attempt at monopolization by Frontier and various nonparty coconspirators. These practices amounted to Frontier's failing to advise customers at the Fort Sill SATO of the services that Great Plains provided.[2] Under the SATO agreement, Frontier had no obligation to represent the interest of any airline that was not a participating or concurring member.

The district court granted Frontier's motion for summary judgment on the basis of antitrust immunity under Section 414 of the Federal Aviation Act. As set out in the district court opinion, "[t]he test for immunity has two prongs: the court must find (1) that the conduct charged was approved by a specific order of the CAB or was clearly contemplated by such an order and (2) that the CAB monitored and supervised the conduct complained of." Mem. Op. quoting *United States v. Braniff Airways, Inc.*, 453 F.Supp. 724, 727 (W.D.Tex.1978). This test was extracted from *Hughes Tool Co. v. Trans World Airlines, Inc.*, 409 U.S. 363, 389, 93 S.Ct. 647, 662, 34 L.Ed.2d 577 (1973).

The district court, explicitly aware that exemptions from the antitrust laws are to be implied "only to the minimum extent necessary," *Cantor v. Detroit Edison Co.*, 428 U.S. 579, 597, 96 S.Ct. 3110, 3121, 49 L.Ed.2d 1141 (1976), concluded that since the CAB had expressly approved the Air Traffic Conference of America resolution under which SATOs across the country have been established, those practices alleged by Great Plains to be unfair were approved by CAB as simply being part of the authorized operation of the SATO. In addition, the court found that CAB has continued to monitor and approve amendments to the resolution, has conducted an informal investigation of allegedly illegal activities at SATOs, including the Fort Sill SATO, and has considered the relationship between Frontier and Great Plains in a

---

1. The allegations in this case involve a period from November 1975 through March 1977, so that the 1978 amendments to the Federal Aviation Act are not applicable here. Section 414, 49 U.S.C. § 1384, provided, prior to the 1978 amendments:

   Any person affected by any order made under sections 1378, 1379, or 1382 of this title shall be, and is hereby, relieved from the operations of the "antitrust laws", as designated in section 12 of Title 15, and of all other restraints or prohibitions made by, or imposed under, authority of law, insofar as may be necessary to enable such person to do anything authorized, approved, or required by such order.

2. There is evidence in the record that Frontier did represent Great Plains without having any obligation to do so, although this representation was not at the level that Great Plains desired. Great Plains's initial complaint alleged that Frontier engaged in objectionable activities with respect to Great Plains not related to the Fort Sill SATO. The district court held that these practices were not immune and Frontier's motion for summary judgment was denied with respect to these. Great Plains then filed an amended complaint that did not re-allege the activities with respect to which the district court denied summary judgment.

1977 order dealing primarily with other routes.

Great Plains does not dispute the test used by the district court, but it objects to the application of the test to the facts of this case. Specifically, Great Plains claims that: (1) CAB approval of the resolution under which the SATOs were established does not amount to CAB approval of the questioned practices; and (2) the CAB has not monitored and supervised the conduct in question.

With respect to the first claim, in order for the questioned conduct to be authorized or approved by the CAB, it is not necessary that the CAB specifically approve a particular course of dealings "so long as the alleged conduct is clearly within the contemplation of prior CAB orders." *Scroggins v. Air Cargo, Inc.*, 534 F.2d 1124, 1131 (5th Cir. 1976). Our decision in *Scroggins* also provides the answer to plaintiff's second claim: continuing scrutiny of amendments by the CAB can satisfy the continuing supervision element established by *Hughes, supra.* Plaintiff's contention that the trial court relied solely on a letter by a CAB attorney that plaintiff claims shows only that a CAB investigation was begun after the present suit was filed is negated by the district court opinion, which states clearly that its decision was predicated primarily on continued CAB supervision by approval of amendments to the resolution under which the SATOs are established.

We are unable to say that the district court erred in granting Frontier's motion for summary judgment and, accordingly, we AFFIRM the decision below.

AFFIRMED.

TATE, Circuit Judge, dissenting:

I am unable to concur in the majority opinion for the reason that certain allegations by Great Plains seem to present factual questions that are improperly disposed of by summary judgment.

Great Plains argues that the damage that it suffered as a result of not having its services advertised by Frontier occurred, not only because it was not a "concurring member" under the SATO agreement, but because Frontier was in a conspiracy with other SATO members to boycott Great Plains by acting in concert to actively disparage the quality of Great Plains service in a number of ways. If these allegations were true, there is a substantial issue of disputed material facts as to whether antitrust immunity existed.

In *Hughes Tool Co. v. Trans World Airlines, Inc.*, 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973), the Supreme Court stated: "One of the most conspicuous exceptions [to antitrust immunity under the Federal Aviation Act] would be the combination or agreement between two air carriers involving trade restraints." 409 U.S. at 387, 93 S.Ct. at 661. Even if the SATO agreement implicitly permitted Frontier to ignore Great Plains in its planning packages, and CAB approved the agreement, I doubt whether immunity would attach if such neglect and disparagement was the result of Frontier's agreement ("combination") with other SATO members to drive Frontier out of business.

In any event, this is not an issue for summary judgment disposition; the first prong of the immunity test set out in *Hughes, supra*, requires a finding that the CAB approved of the conduct complained of, if only indirectly by the conduct being within the contemplation of prior CAB orders. *See Scroggins v. Air Cargo, Inc.*, 534 F.2d 1124, 1131 (5th Cir. 1976). It has not been shown that the concerted disparagement, if any existed, is immune. I would, therefore, reverse the summary judgment of the trial court dismissing Great Plains' suit.